

DA 10-0274

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 277N

IN THE MATTER OF:

M.C.B.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDN 08-39
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Joslyn Hunt, Chief Appellate Defender; Sarah Chase Rosario y Naber, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Steve Bullock, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

        Leo Gallagher, Lewis and Clark County Attorney; Tara Harris, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  December 1, 2010

Decided:  December 21, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.C.B. was born in December of 2008. M.C.B. was removed from the care of his mother, L.B., and father, T.B., on December 22, 2008, due to concerns regarding his weight loss and his parents' inability to properly feed him. On March 3, 2009, after a hearing, M.C.B. was adjudicated a youth in need of care based upon his weight loss after birth, his parents' inability to properly prepare bottles and feed him, M.C.B.'s infected umbilical cord stump, T.B.'s previous anger and mental health issues, M.C.B.'s missed doctor's appointment, and Dr. Theresa Augustine's opinion that M.C.B was not safe in the care of L.B. and T.B. Temporary custody, not to exceed six months, was awarded to the Department of Public Health and Human Services (DPHHS).

¶3 On April 2, 2009, the District Court approved a treatment plan for T.B. and L.B. Both T.B. and L.B. generally complied with the treatment plan. While the treatment plan was in place, T.B. and L.B. agreed that M.C.B. should remain in DPHHS custody, and temporary custody was extended beyond the initial six-month period.

¶4 On December 18, 2009, DPHHS filed a petition to terminate the parental rights of T.B. and L.B. M.C.B.'s guardian ad litem filed a report supporting DPHHS's petition. A

2

hearing on the petition was held on March 1, 2010. Both T.B. and L.B. were present and testified. DPHHS Child Protection Specialist Tiffany Sturdevant testified she had concerns about both parents' ability to adequately parent M.C.B.

¶5 Dr. Ned Tranel, a clinical psychologist, evaluated both parents at the request of DPHHS. He testified at the hearing that L.B.'s deficit in executive functioning would make it difficult to perform routine parenting functions, and her low IQ score would complicate most life functions. Dr. Tranel testified that because her handicaps were so severe, chronic, and essentially untreatable, her prognosis was "very poor" and she would not be able to safely parent a child.

¶6 Dr. Tranel found T.B. has limitations based upon his developmental history and his "angry, explosive response to stressors." Dr. Tranel testified T.B. could respond to therapy and medication, but he could not make up for L.B.'s deficits. In sum, Dr. Tranel testified that:

> [T]he two of them would not be able to generate a minimum standard in time to provide adequately for the child's needs. The child doesn't have unlimited time to respond to those needs, and the prognosis for [L.B.] is poor. The prognosis for [T.B.] is not as severe, but it's still at a level that would enable – make it very difficult for him to meet a minimal standard of parenting.

¶7 Social worker Pam Robertson supervised approximately eighty visits between M.C.B., L.B., and T.B. She testified that while progress was made by L.B. and T.B., both parents would have to be coached at each stage of M.C.B.'s development. Robertson felt that L.B. and T.B. could do nothing without coaching. Patricia Kemp, a licensed clinical professional counselor, conducted a parenting assessment of both T.B. and L.B. She opined

3

that M.C.B.'s emotional and physical development would be in imminent danger if parented solely by T.B. and L.B. She felt that both parents' prognosis was "poor."

¶8 DPHHS Child Protection Specialist Supervisor Dennis Molnar testified that although L.B. and T.B. loved M.C.B., termination of L.B.'s and T.B.'s parental rights was in the best interest of M.C.B. Court Appointed Special Advocate (CASA) John Weida also testified that termination of L.B.'s and T.B.'s parental rights was in M.C.B.'s best interest. It was a recommendation Weida did not make lightly.

¶9 On April 28, 2010, the District Court entered an order terminating the parental rights of L.B. and T.B. It found that "the treatment plan has not been successful and that the condition of the parents rendering them unfit is unlikely to change within a reasonable time" and that "the best interests of [M.C.B.] will be served by termination of [T.B.'s] and [L.B.'s] legal relationship." L.B. and T.B. appeal from that order.[1] We affirm.

¶10 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re Custody & the Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, 109 P.3d 232 (internal citations omitted). However, because a parent's right to the care and custody of a child is a fundamental liberty interest, it must be protected by fundamentally fair procedures. To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific

4

factual findings. We review those findings of fact to determine whether they are clearly erroneous. Lastly, we review the court's conclusions of law to determine whether the court interpreted the law correctly. *Id*.

¶11 The district court must give primary consideration to the physical, mental and emotional conditions and needs of the child. Consequently, the best interests of the child are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights. Section 41-3-609(3), MCA; *Parental Rights of C.J.K.*, ¶ 14.

¶12 L.B. and T.B. raise two issues on appeal:

¶13 *Issue One: Did the District Court exceed its statutory authority under § 41-3-609(4)(b), MCA, which requires the testimony of two medical doctors or clinical psychologists to establish that the parent cannot assume the role of parent within a reasonable time?*

¶14 The District Court did not violate § 41-3-609(4)(b), MCA. Section 41-3-609(4)(b), MCA, does not apply to this case. It applies to cases in which a treatment plan is not implemented. In this case, there was a treatment plan which was, sadly, unsuccessful.

¶15 *Issue Two: Did the District Court err when it found the State had established by clear and convincing evidence that the condition of the parents rendering them unfit is unlikely to change within a reasonable time and that the treatment plan was unsuccessful?*

¶16 Based upon the record before the Court, the District Court did not err when it terminated L.B.'s and T.B.'s parental rights.

---

[1] In the interest of justice, an out of time appeal was granted in this case.

¶17   We decided this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. The legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted, and the record supports the District Court's conclusion to terminate L.B's and T.B.'s parental rights. The District Court did not abuse its discretion. Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JAMES C. NELSON